UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTHONY KEEPERS,

        Plaintiff,

        v.                                      Case No. 20-CV-1306-bhl

NATHAN TAPIO,
HSM MARCHANT,
HSU STAFF 1-5,
and SGT. KELLER,,

        Defendants.

## SCREENING ORDER

        Plaintiff Anthony Keepers, a Wisconsin state prisoner, filed a *pro se* complaint under 42 U.S.C. §1983 alleging that the defendants violated his constitutional rights. This order resolves plaintiff's motion for leave to proceed without prepaying the filing fee, screens his complaint, and resolves his motion to appoint counsel.

        **A. Motion for Leave to Proceed without Prepaying the Filing Fee**

        The Prison Litigation Reform Act (PLRA) applies to this case because plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

        On August 27, 2020, Magistrate Judge Nancy Joseph ordered plaintiff to pay an initial partial filing fee of $14.99. (ECF No. 6.) Plaintiff paid that fee on September 11, 2020. The

Court will grant plaintiff's motion for leave to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

### B. Screening the Complaint

#### 1. Federal Screening Standard

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*,

570 F.3d 824, 827 (7th Cir. 2009)).  The Court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers.  *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2. Plaintiff's Allegations[1]

Plaintiff suffers from type 1 diabetes and is incarcerated at the Waupun Correctional Institution..  Defendants Dr. Nathan Tapio and Health Services Unit (HSU) Manager Marchant knew that he was a "severely brittle, insulin dependent diabetic."  (ECF No. 1 at 2.)  On August 8, 2017, plaintiff notified "HSU staff" and Dr. Tapio that he would be refusing blood sugar checks, insulin, and meals for the next two weeks.  Plaintiff reported to HSU staff, Dr. Tapio, and HSU Manager Marchant several times that he was refusing medical care, but they ignored the situation.  Dr. Tapio, Marchant, and HSU staff knew that plaintiff's refusal of food and insulin would cause damage and potentially death, but they ignored the risk.  Plaintiff fell into diabetic ketoacidosis and nearly died.  He was hospitalized and treated in the intensive care unit for nearly two weeks.

On September 9, 2017, plaintiff suffered a "hypoglycemic episode."  (ECF No. 1 at 3.)  At 11 p.m., he pressed his emergency button and asked his neighbor to press his button as well.  After briefly falling unconscious, plaintiff covered his window with a sign that read, "Medical Emergency! Diabetic Shock!"  (*Id.*)  After several hours of seizures and passing out, plaintiff ate scraps out of his garbage to try to stay alive.  The next morning, defendant Sergeant Keller stopped at his cell door.  He told plaintiff that the button never rang in the bubble and that, although he saw the sign, he assumed that plaintiff was asleep.  Sergeant Keller knew that

---

[1] These two paragraphs are based on allegations in plaintiff's complaint and are assumed to be true for purposes of screening.

plaintiff was diabetic.  He ignored the risk and, as a result, plaintiff suffered all night and was forced to eat garbage to survive.

Plaintiff seeks declaratory relief, compensatory damages, and punitive damages.

### 3. Analysis

There is a general liberty interest in refusing medical treatment.  *See Cruzan by Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 278-79 (1990).  Prisoners maintain a liberty interest in their own medical care.  *See Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (prisoners possess significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment).  On the other hand, at some point, a prisoner's refusal of medical treatment might turn suicidal and require the prison's intervention.  *See Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir. 2005) (citing *Sanville v. McCaughtry*, 266 F.3d 724, 729-34 (7th Cir. 2001)); *Freeman v. Berge*, 441 F.3d 543, 546 (7th Cir. 2006) (at some point, a jail may have to force feed a prisoner to prevent the inmate from seriously endangering his or her health); *see also Hahn v. Walsh*, 762 F.3d 617, 638 (7th Cir. 2014) (affirming summary judgment for sheriff on *Monell* claim where inmate did not show that sheriff knew there was a custom of diabetic detainees refusing to participate in their own care and, as a consequence, suffering serious medical ramifications but also stating that record suggested that any deliberate indifference that may have occurred was at the hands of the individual correctional officers or medical staff who interacted with the diabetic plaintiff).

Plaintiff may proceed on an Eighth Amendment claim against Dr. Tapio, HSU Manager Marchant, and HSU Staff 1-5 based on allegations that they ignored his refusal to take insulin and eat food resulting in diabetic ketoacidosis and hospitalization.  After Dr. Tapio and HSU

4

Manager Marchant respond to the complaint and the court issues a Scheduling Order, plaintiff will need to use discovery to identify the names of the unknown HSU staff defendants.

Plaintiff's allegations against Sergeant Keller state an arguable claim for deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976). But while the claim involves plaintiff's diabetes, as alleged, it does not arise out of the same events or incidents as plaintiff's claim against Dr. Tapio, HSU Manager Marchant, and HSU Staff 1-5. Plaintiff may not bring this unrelated claim against Sergeant Keller in this case. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). The Court will therefore dismiss Sergeant Keller. Plaintiff is free to bring a separate lawsuit regarding his claim against Keller.

### C. Plaintiff's Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (ECF No. 4.) He states that he is unable to afford counsel, his imprisonment will greatly limit his ability to litigate, and that the issues involved in this case are complex and will require significant research and investigation. Plaintiff also states that he has limited access to the law library and limited knowledge of the law. Plaintiff states that he has made repeated efforts to find a lawyer on his own. He includes a recent letter from one law firm requesting confirmation him that he wants them to review his potential claim and another letter from a law firm that references plaintiff's August 6, 2017 letter requesting legal assistance (which predates plaintiff's claim in this case). Plaintiff also lists the names of four other lawyers and one law firm he says he has contacted to obtain representation.

In a civil case, the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether

5

to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the Court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Pennewell v. Parish*, 923 F.3d 486, 490 (7th Cir. 2019) (quoting *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007)). To satisfy the first prong, the Court must determine that a plaintiff made a good faith effort to hire counsel. *Pickett v. Chicago Transit Authority*, 930 F.3d 869, 871 (7th Cir. 2019). To do so, plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

When considering the second prong, the Court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." *Pennewell*, 923 F.3d at 490. The Court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." *Id.* This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." *Id.* at 490-491. The Court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Id.* at 491. In situations where the plaintiff files his motion in the early stages

6

of the case, the Court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." *Pickett,* 930 F.3d at 871.

The Court finds that plaintiff has made a reasonable effort to find a lawyer on his own. However, Plaintiff's filings demonstrate that he can represent himself at this stage. He is articulate and appears to have a good understanding of his claims, which are not very complex. Based on Plaintiff's filings in this case, the Court believes that he should be able to engage in discovery and pretrial motion practice on his own. The Court will therefore deny without prejudice plaintiff's motion to appoint counsel.

## CONCLUSION

**THEREFORE, IT IS ORDERED** that plaintiff's motion for leave to proceed without prepaying the filing fee (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel (ECF No. 4) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that defendant Sgt. Keller is **DISMISSED**.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Nathan Tapio and HSM Marchant. It is **ORDERED** that, under the informal service agreement, those defendants shall file a responsive pleading to the complaint within 60 days.

**IT IS FURTHER ORDERED** that the agency having custody of plaintiff shall collect from his institution trust account the $335.01 balance of the filing fee by collecting monthly payments from plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to plaintiff's trust account and forwarding payments to the Clerk of

7

Case 2:20-cv-01306-BHL-NJ   Filed 10/02/20   Page 7 of 9   Document 8

Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this order along with his remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where plaintiff is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. Plaintiff is reminded that it is his responsibility to

---

[2] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

promptly notify the court if he is released from custody or transferred to a different institution. Plaintiff's failure to keep the court advised of his whereabouts may result in the dismissal of this case without further notice.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that plaintiff may find useful in prosecuting his case.

Dated at Milwaukee, Wisconsin this 2nd day of October, 2020.

s/ Brett H. Ludwig<br>
Brett H. Ludwig<br>
United States District Judge

9

Case 2:20-cv-01306-BHL-NJ   Filed 10/02/20   Page 9 of 9   Document 8